IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITIBANK, N.A., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16 C 2599 |
| MUNICIPAL EMPLOYEES', OFFICERS' and OFFICIALS' ANNUITY AND BENEFIT FUND OF CHICAGO; FRANK M. GALVIN; and JAMES P. GALVIN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge

Citibank, N.A. has sued the Municipal Employee's Officer's and Official's Annuity and Benefit Fund of Chicago (the Fund), Frank Galvin, and James Galvin. The Court has jurisdiction based on diversity of citizenship. In 2012, the Fund directed Northern Trust Bank to debit the Citibank account of William Galvin, a deceased pensioner, for a little over $200,000 and to transfer that money to the Fund's account at Northern Trust. The $200,000 is claimed to represent amounts that the Fund had erroneously paid to Galvin after his death, though neither the Fund nor Northern Trust advised Citibank of this at the time. Citibank transferred a little over $95,000 and then stopped.

Citibank contends that the Fund acted improperly in causing the transfer of the $95,000 and wants the money back. Citibank has also sued the pensioner's sons, Frank and James Galvin, saying that they improperly received the benefit of the money

that was transferred. Citibank has asserted claims of unjust enrichment against the Fund and Galvin's sons. It has also asserted claims against the Fund for money had and received and for conversion.

The Fund has moved to dismiss Citibank's claims for lack of subject matter jurisdiction, failure to state a claim, and failure to join a necessary party. For the reasons stated below, the Court denies the Fund's motion.

## Background

The Court takes the following facts from the allegations in Citibank's complaint (except where otherwise noted), accepting those allegations as true for present purposes and drawing reasonable inferences in Citibank's favor. *See Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016).

In 1996, William Galvin and his wife opened an account at Citibank. Galvin was an employee of the City of Chicago and a participant in the Fund, which administers pension benefits for retired city employees. After Galvin retired, the Fund, through Northern Trust, began depositing Galvin's pension benefit payments into his account at Citibank. Galvin died in October 2004. Despite this, the Fund continued to direct Northern Trust to deposit pension payments into Galvin's account. Citibank alleges that payments totaling $203,293.83 were deposited into the account between November 1, 2004 and July 30, 2010.

The Fund says in its motion to dismiss and in a separate state court lawsuit that it has filed against Galvin's sons Frank Galvin and James Galvin that it did not learn of William's death until September 2012. The Fund also says that in 2008, it sent a form to William Galvin (who by then had been dead for four years) to verify his status, and it

2

received back a signed and notarized form verifying his signature.

Citibank alleges that in September 2012, the Fund learned that William Galvin had died in 2004 and that it had been making benefit payments to Galvin after his death. In an effort to recoup the amounts paid to Galvin after his death, the Fund allegedly instructed Northern Trust to process a series of automated clearing house (ACH) transactions with Citibank directing it to debit Galvin's Citibank account in various amounts and transfer the proceeds to Northern Trust. At that point, Citibank alleges, Galvin's account had a balance of only $3.18, the rest having allegedly been withdrawn by or at the behest of Galvin's sons. Citibank "electronically processed" the debit requests and paid $95,632.93 of its own funds to Northern Trust before discovering that Galvin's account was empty. This represented the amount that the Fund, via Northern Trust, had paid to William Galvin from November 1, 2004 through December 31, 2007.

Citibank alleges that it did not owe the Fund any of the money it had paid out and that the Fund wrongfully received $95,629.75, that is, $95,632.93 less the $3.18 that was in William Galvin's account. Citibank alleges that the Fund violated the agreed-upon rules governing ACH transactions by initiating the transactions without authorization from the account holder (William Galvin) and by giving an implied but false warranty that the debits were properly authorized under the applicable rules.

As indicated above, in July 2015, the Fund filed suit in state court against Frank and James Galvin seeking to recover $162,277.90 based on their alleged fraud and unjust enrichment, arising from their receipt of monies that the Funds had caused to be paid to William Galvin's account after his death. The amount requested by the Fund in the state court lawsuit includes the $107,660.90 that the Fund was not able to get from

3

Citibank, plus $54,617.00 in federal tax withholding and health insurance premiums and subsidies that the Fund paid on William Galvin's behalf after his death.

As indicated earlier, Citibank has sued the Fund and Galvin's sons, seeking return of the $95,629.75 that it transferred at the Fund's direction. Citibank asserts claims against the Fund for unjust enrichment (count one), conversion (count two), and money had and received (count three). It also asserts a claim against Frank and James Galvin for unjust enrichment (count four). The Fund has moved to dismiss counts one, two, and three, arguing lack of subject matter jurisdiction, failure to state a claim as to counts one and three, and failure to join a necessary party, namely, Northern Trust.

## Discussion

**1. Proper defendants; exhaustion of remedies**

The Fund seeks dismissal of all of Citibank's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Fund contends that it is not a suable entity and that Citibank should have sued its board of trustees, and that before filing suit, Citibank was required to present its claim to the board.

These issues do not appear to the Court to implicate its subject matter jurisdiction, which involves "the courts' statutory or constitutional power to adjudicate [a] case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (internal quotation marks omitted). Rather, the Fund's arguments appear to concern non-jurisdictional issues involving who is the proper defendant and what are the prerequisites to suit. On the latter point, exhaustion of administrative remedies is, in these circumstances, a non-jurisdictional affirmative defense under Illinois law. The Fund's contention is not that a court can never adjudicate Citibank's claim, but that the Fund has to address the claim

4

administratively before Citibank can take it to court. *See* Def.'s Mem. in Support of Mot. to Dismiss at 6 ("[A] plaintiff cannot proceed directly to the courts without first exhausting a statutorily mandated administrative review procedure."). *See generally Vill. of Bedford Park v. Expedia, Inc. (WA)*, 12 C 5633, 2015 WL 3528232, at *2-3 (N.D. Ill. June 4, 2015) (Kennelly, J.).

One way or another, however, the Fund's arguments do not provide a basis for dismissal. First of all, though the Fund has made a good case that the board of trustees can and perhaps should be sued in a case like this, it has not argued persuasively that the Fund itself cannot sue or be sued. Indeed, the state court lawsuit against William Galvin's sons is brought in the Fund's own name, not on behalf of the board of trustees—and that lawsuit was filed by the same law firm that represents the Fund in this case. The Court agrees that the board of trustees should be added as a defendant, *see* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."), but it declines at this time to dismiss the Fund as a defendant.

On the question of exhaustion, the Fund relies on an Illinois statute that says that "the board shall have exclusive original jurisdiction in all matters relating to the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits, or refunds." 40 ILCS 5/8-203. Citibank contends that this does not require a third party claimant—that is, a person or entity that is not a beneficiary of the fund—to submit its claims to the fund's trustees. The Court need not adjudicate that issue, however, because Citibank has adequately shown that exhaustion would be futile.

Exhaustion is excused "where the agency cannot provide an adequate remedy or

where it is patently futile to seek relief from the agency." *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 309, 547 N.E.2d 437, 439 (1989). "Futility is demonstrated by showing that it is certain a plaintiff's claim will be denied by the plan administrator," such as if the record indicates that the administrator has opposed a claim "at every step." *Ruttenberg v. U.S. Life Ins. Co. in City of N.Y.*, 413 F.3d 652, 662, 663 (7th Cir. 2005). Citibank alleges in its complaint that it demanded return of the funds at issue and that "[o]n February 8, 2016, the Pension Fund, through its attorney, refused to return the $95,629.75 to Citibank." Compl. ¶¶ 39, 40. Citibank has attached the Fund's lawyer's communication to its response to the motion to dismiss, and a court may consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss . . . when evaluating the sufficiency of a complaint so long as they are consistent with the allegations in the complaint," *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (internal quotation marks omitted), which is the case here.

Citibank's demand to the Fund as described in paragraph 39 of the complaint may constitute sufficient exhaustion of internal plan remedies, but even if not, the Fund's response demonstrates that further attempts to exhaust would be futile. The letter by the Fund's counsel rejecting Citibank's demand for return of the money is strong and unequivocal. Counsel—who was, of course, acting as the Fund's agent— states that the Fund "categorically denies" Citibank's claim. Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. B at 1. The Fund's counsel states that the amounts deposited into Galvin's account "were never the property" of Galvin "and remained at all times the property of [the Fund]." *Id.* Counsel concludes the letter by stating that "[t]he Board of Trustees, we believe, would vigorously defend itself against any of the charges" asserted in

Citibank's demand letter. *Id.* at 2. This rejection of Citibank's demand for return of the money, in the Court's view, demonstrates that any further attempt by Citibank to pursue relief directly with the Fund or its board of trustees would be futile.

**2. Failure to state a claim**

As indicated earlier, the Fund has moved to dismiss Citibank's claims for unjust enrichment and for money had and received for failure to state a claim. When considering a motion to dismiss for failure to state a claim, the Court accepts the facts alleged in the complaint as true and draws reasonable inferences in favor of the plaintiff. *See, e.g., Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). To state a viable claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim for unjust enrichment under Illinois law, Citibank must allege that the Fund "has unjustly retained a benefit" to Citibank's detriment and that the Fund's retention of the benefit "violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). The Fund argues that Citibank has failed to allege facts sufficient to sustain a contention that the Fund unjustly retained a benefit of that its retention of a benefit would violate principles of justice, equity, and good conscience. The Court disagrees. Citibank alleges that the Fund procured the ACH transfers through directions that contravened the agreed-upon rules governing ACH transactions,

7

which are referred to as the NACHA Operating Rules & Guidelines.  *See* Compl. ¶ 23.
(NACHA is an acronym for the National Automated Clearing House Association.)  This
allegation is sufficient to support a contention that the Fund procured the money
wrongfully and that its retention of money that it obtained wrongfully is unjust.

To state a claim for money had and received under Illinois law, Citibank must
plausibly allege that the Fund "received money which in equity and good conscience
belongs to the plaintiff."  *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925, 735 N.E.2d 144,
147 (2000).  Citibank's allegations that the Fund issued unauthorized and therefore
inappropriate ACH transfer requests and that Citibank mistakenly paid the Fund based
on these requests are sufficient to state a claim.  Contrary to the Fund's contention,
Illinois law does not require a plaintiff, to sustain a money had and received claim, to
prove that it was *compelled* to pay the defendant.  *Id.*

**3.     Northern Trust as a necessary party**

The Fund argues that full relief cannot be afforded without joining Northern Trust
as a party because that bank is in possession of the money at issue in the case.  The
Court disagrees.  Though the money was transferred to an account at Northern Trust,
the account is controlled by the Fund.  An order directing the Fund to transfer the
money to Citibank can be carried out without making the Northern Trust a party to the
case.

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss
[dkt. no. 12]; directs plaintiff to add the Fund's board of trustees as a defendant via the
filing of an amended complaint by no later than August 3, 2016; and directs defendants

to answer the amended complaint by no later than August 24, 2016. The case set for a status hearing on August 12, 2016 at 9:00 a.m., at which the Court will set a discovery and pretrial schedule and will discuss with the parties the possibility of settlement. Counsel are directed to confer prior to that date to attempt to agree on a schedule to propose to the Court. Plaintiff's counsel should be prepared to address at that time the status of defendants Frank Galvin and James Galvin.

Date: July 26, 2016

_____
MATTHEW F. KENNELLY
United States District Judge